J-S30013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AARON MILLS | : | |
| | : | |
| Appellant | : | No. 1045 EDA 2018 |

Appeal from the Judgment of Sentence Entered March 6, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001155-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED MARCH 27, 2020**

Aaron Mills appeals from the judgment of sentence imposed on March 6, 2018, in the Court of Common Pleas of Chester County. A jury convicted him of three counts of robbery, two counts of aggravated assault, two counts of simple assault, and one count each of terroristic threats, theft by unlawful taking, receiving stolen property, carrying a firearm without a license ("VUFA"), possession of an instrument of crime ("PIC"), and criminal conspiracy.[1] The trial court sentenced Mills to an aggregate term of 16 to 44 years' imprisonment.

---

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii)(iii)(iv), 2702(a)(1)(4), 2701(a)(1)(3), 2706(a)(1), 3921(a), 3925(a), 6106(a)(1), 907(a), and 903(a)(1), respectively.

Contemporaneous with this appeal, Mills' counsel has filed a petition to withdraw from representation and an **Anders** brief. **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981). The two issues addressed in the **Anders** brief are challenges to the sufficiency of the evidence and a claim the prosecutor exercised peremptory strikes in a racially discriminatory manner in violation of **Batson v. Kentucky**, 476 U.S. 79 (1986). After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm and grant counsel's petition to withdraw.

On October 29, 2017, the victim, Scott Thornton, and his wife returned to their home in Thorndale, Chester County, after dinner at a local restaurant. N.T. Trial, 1/23/18, at 11. As Thornton exited the car, he saw a tall, thin, African American man approach. The man was wearing a mask pulled down over half his face, a dark top, gray sweat pants and sneakers; he raised a semiautomatic weapon to Thornton's head and said, "I know you got money. Give me your cash. Give me your wallet." **Id.** at 16; **see also** N.T. Trial 1/22/18, at 63; 1/23/18 at 16-17.

Thornton handed over his cell phone, but the man continued to demand Thornton's wallet. **Id.** at 21-22. After Thornton complied, the assailant rifled through the wallet, pulled out Thornton's debit card, and demanded the card's personal identification number. **Id.** at 23-24. Thornton made up a number

as the man bent to pick up the wallet, which he had dropped in his haste. *Id.* at 24-25. Thornton then unsuccessfully attempted to tackle him. *Id.*

The man again pointed the gun at Thornton and instructed him to get down on the ground, where he kicked Thornton in the ribs. *Id.* at 25-27. Thornton looked up just as the man raised the gun to Thornton's face and pulled the trigger. *Id.* Thornton heard the click of the gun, and saw the man's eyes widen in surprise when it did not fire. *Id.* Thornton's wife, although unable to observe all of the incident, also saw the gun and heard it click. *Id.* The robber began running away as Thornton gave chase. *Id.* at 54-55. The robber got into a dark-colored Nissan sedan with Delaware plates and drove off. *Id.* at 27-28, 31-34. A red sedan that had been parked right behind the robber's vehicle also quickly drove away. *Id.*

Thornton's wife called police, who spotted the vehicles driving close together on the highway approximately 15 minutes later. *Id.* at 38-39. Officers conducted a traffic stop of the dark-colored Nissan, and arrested Appellant and his accomplice. Police recovered one of Thornton's credit cards and his wallet from the dark-colored Nissan. *Id.* at 172-74, 176-77. Some of Thornton's other credit cards and his cell phone were found scattered between the scene of the crime and the location where the police stopped the vehicle. *Id.* at 179, 182.

Appellant proceeded to a jury trial. Appellant's accomplice, Myles Turner, a long-time friend, who had entered an open guilty plea to robbery,

conspiracy, and aggravated assault, testified he and Appellant had planned to break into houses in Thornton's neighborhood and steal televisions. *Id.* at 71-74. Turner brought his girlfriend and his sister, who accompanied the men in a red sedan. *Id.* at 73-74. Turner stated when Appellant exited the Nissan, Turner believed he was going to burglarize a nearby home. *Id.* at 78-79. Turner averred when Appellant exited the car, he put on a mask and carried a loaded firearm. *Id.* Appellant then ran back toward the cars moments later, shouting "pull off, pull off!" as a man chased him. *Id.* at 82.

Alexis Turner, Myles Turner's sister, also testified as to her role in the events. She stated Myles Turner and Appellant were long-time friends and she had known Appellant for eight or nine years. *Id.* at 107-08. She confirmed Myles Turner and Appellant wanted to borrow her vehicle to use in a scheme to burglarize some homes and steal televisions. *Id.* at 110-12. Naikeya Hunter, Myles Turner's girlfriend, also testified, confirming Turner's version of the events of that evening. *Id.* at 122-35.

On January 24, 2018, the jury convicted Appellant of the aforementioned charges. On March 6, 2018, following receipt of a pre-sentence investigation report, the trial court sentenced Appellant as delineated above. The instant timely appeal followed.[2]

---

[2] Appellant, despite being represented by counsel, filed the notice of appeal *pro se* as well as a *pro se* concise statement of errors complained of on appeal. This Court remanded the matter for a determination of whether Appellant had

Preliminarily, we note when counsel files a petition to withdraw and accompanying **Anders** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. **See Commonwealth v. Bennett**, 124 A.3d 327, 330 (Pa. Super. 2015). Here, our review of the record reveals counsel has substantially complied with the requirements for withdrawal outlined in **Anders** and its progeny.

Specifically, counsel requested permission to withdraw based upon his determination the appeal is "wholly frivolous," filed an **Anders** brief pursuant to the dictates of **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009), furnished a copy of the **Anders** brief to Mills[3] and advised Mills of his right to retain new counsel or proceed *pro se*. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Moreover, our review of the record reveals no correspondence from Mills responding to the **Anders** brief. Accordingly, we will proceed to examine the issues counsel identified in the **Anders** brief, and then conduct "a full examination of all the

---

been abandoned by counsel. The trial court, after determining counsel had abandoned Appellant, appointed new counsel. In response to the trial court's order, counsel filed an amended Rule 1925(b) statement on September 7, 2018. On December 17, 2018, the trial court issued an opinion.

[3] On October 25, 2019, this Court remanded the matter for counsel to file an amended notice of appeal and to file an amended proof of service demonstrating he served a copy of the **Anders** brief on Appellant. Counsel has now complied with all of this Court's directives.

proceedings, to decide whether the case is wholly frivolous."
*Commonwealth v. Yorgey*, 188 A.3d 1190, 1195 (Pa. Super. 2018) (*en banc*).[4]

First, Mills contends that the evidence was insufficient to support his convictions. *See Anders* Brief, at 14-20. We disagree.

Our standard of review of a sufficiency claim is well settled:

> Our standard for evaluating sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable [factfinder] to find every element of the crime beyond a reasonable doubt. [T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Moreover, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Shull*, 148 A.3d 820, 844 (Pa. Super. 2016) (citation omitted).

Here, the trial court in its Rule 1925(a) opinion provided a thorough and well-reasoned discussion of Appellant's sufficiency of the evidence issues. *See* Trial Court Opinion, 12/17/18, at 53-76 (finding the evidence sufficient to sustain conviction for: (1) aggravated assault (54-59); (2) simple assault (59-60); (3) theft by unlawful taking (60-62); (4) robbery (63-66); (5)

---

[4] **See also *Commonwealth v. Dempster*, 187 A.3d 266 (Pa. Super. 2018) (*en banc*).

- 6 -

terroristic threats (66-68); (6) receiving stolen property (68-69); (7) VUFA (69-71); (8) PIC (71); and (9) conspiracy (72-76)). Our review of the record reveals ample support for the trial court's conclusions. Accordingly, we adopt the reasoning of the trial court on this issue. Appellant's first claim does not merit relief.

In his second claim, Appellant argues the trial court erred in denying his **Batson** challenge and allowing the Commonwealth to strike the only African-American venire person from the jury. **Anders** Brief, at 20-22. However, Appellant waived this claim, which, in any event, is meritless.

Initially, we note a **Batson** claim presents mixed questions of law and fact. Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous.

> In **Batson**, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution. When a defendant makes a **Batson** challenge during jury selection:
>
>> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Commonwealth v. Edwards**, 177 A.3d 963, 971 (Pa. Super. 2018) (citations and quotation marks omitted). "The trial court should consider the totality of

- 7 -

circumstances when determining whether the prosecutor acted with discriminatory intent or engaged in purposeful discrimination." ***Commonwealth v. Towles***, 106 A.3d 591, 602 (Pa. 2014) (citation omitted). This Court must give great deference to the trial court's finding about the absence of discriminatory intent in peremptory challenges, and we will not overturn it unless it is clearly erroneous. ***See id.***

Further, with respect to the preservation of ***Batson*** claims, our Supreme Court has stated an appellant must raise a ***Batson*** objection during *voir dire* in order to "preserve a challenge to the Commonwealth's use of peremptory strikes." ***Commonwealth v. Smith***, 17 A.3d 873, 894 (Pa. 2011). Where "defense counsel did not raise or preserve any claim of racial discrimination in jury selection with a contemporaneous ***Batson*** objection at trial, we have repeatedly held that the ***Batson*** framework does not apply". ***Commonwealth v. Hutchinson***, 25 A.3d 277, 287 (Pa. 2011).

Here, the record reveals Appellant did not raise a ***Batson*** objection during the jury selection process. Rather, immediately prior to exercising peremptory challenges, the Commonwealth noted there was only a single African-American venire person. N.T. Trial, 1/22/18, at 58. The Commonwealth stated it was going to challenge her and wanted to explain its reasoning, namely, because the venire person said she was less likely to believe the testimony of a police officer, and there were many police officers

testifying in the case, and because her nephew was awaiting trial in a home invasion case. *Id.*

The trial court noted it was also familiar with the nephew's case and felt the Commonwealth's reason was legitimate because "we come close to having a home invasion robbery and we know that there is a weapons charge here and there will be the charge of person unlicensed to carry." *Id.* at 58-59. In response, defense counsel stated, "I understand." *Id.* at 59. The Commonwealth then reiterated it would not have considered striking the potential juror but for that situation and defense counsel agreed the Commonwealth had good reason to be skeptical of her. *Id.* at 59. Therefore, at no point did defense counsel raise a *Batson* challenge. Accordingly, Appellant has waived his *Batson* claim.

In any event, the claim lacks merit. Here, the trial court explained:

As set forth in the record and in his Statement of Matters Complained of on Appeal, [Appellant] is African-American. There was one *Batson* challenge[5] during jury selection due to the striking of juror number four . . . who was African-American. If this excluded all African-American venire-persons from the pool of potential jurors, as [Appellant] alleges on appeal, this would establish a *prima facie* case of purposeful discrimination.

Therefore, we must turn to the second step of the *Batson* analysis. . . . In this case, the Commonwealth certainly proffered a race-neutral explanation for striking this juror. During questioning, [the juror] revealed that her nephew had been

---

[5] In its opinion, the trial court noted it did not have the benefit of a transcript and was relying on its memory of the events and its contemporaneous notes. Trial Ct. Op., at 77-78. As we discussed above, the record does not demonstrate defense counsel ever made a *Batson* challenge.

criminally charged following a home invasion with a firearm. The attorney for the Commonwealth confirmed these charges on her nephew . . . .

Coincidentally, [the trial] court had [the nephew] on its Criminal docket and accepted a guilty plea from [him] . . . . Due to the similarity of the charges in this case and her nephew's case, this court finds that this race neutral explanation was valid.

The third step in the Batson analysis involves the court determining if the defense carried its burden of proving purposeful discrimination. . . . Based upon the totality of the circumstances, it is abundantly clear that the Commonwealth's reason for striking this juror was not race related. Due to the similarity of the charges in this case and the juror's nephew's case, the race-neutral explanation for the peremptory challenge defeats [Appellant's] allegation that this was a purposeful discrimination based upon race. Accordingly, [Appellant's] issue on appeal is without merit.

Trial Ct. Op., 12/17/18, at 77-80 (footnote omitted).

In the totality of the circumstances, we discern no legal or factual error. The Commonwealth provided a race-neutral explanation and the trial court found Appellant failed to carry his burden of proving his ***Batson*** claim. ***See Towles***, 106 A.3d at 602; ***Edwards***, 177 A.3d at 971. Thus, even if not waived, Appellant's second and final issue would not merit relief.

Lastly, in accordance with ***Yorgey***, we have independently reviewed the certified record in order to determine if counsel's analysis regarding the frivolous nature of the present appeal is correct. Because we agree with counsel's assessment this appeal is wholly frivolous, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2020